[Cite as *Stern v. Rob Oldham Properties, L.L.C.*, 2022-Ohio-1232.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JERRY M. STERN VICTIM OF NAZI  :
PERSECUTION RESTITUTION
SUCCESSOR TRUST  :

      Plaintiff-Appellee,  :  No. 110357

      v.  :

ROB OLDHAM PROPERTIES, L.L.C.,  :
ET AL.,

      :

      Defendants-Appellants.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART,
              AND REMANDED
**RELEASED AND JOURNALIZED:** April 14, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-917105

---

*Appearances:*

Harold Pollock Co., L.P.A., and Harold Pollock, *for appellee.*

L. Bryan Carr, *for appellants.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendants-appellants, Rob Oldham ("Oldham") and Rob Oldham Properties, L.L.C. ("Oldham Properties") (collectively "appellants") appeal from the

trial court's decision entering judgment and awarding attorney fees in favor of plaintiff-appellee, Jerry M. Stern Victim of Nazi Persecution Successor Trust ("the Trust"). Specifically, appellants challenge the trial court's decisions (1) granting the Trust's motion for sanctions, which effectively prohibited appellants from presenting evidence on their counterclaim and resulted in a judgment in favor of appellee on those claims, and (2) awarding the Trust attorney fees in the amount of $139,417.74, and not applying the appropriate amount of set-off for collected rents. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I.    Factual History and Procedural Background

{¶ 2}    Both parties agree that this case should have been a simple collection action on a promissory note. The nature of the proceedings, however, has been far from simple.

{¶ 3}    In March 2018, Oldham Properties entered into a short-term loan agreement with the Trust. The Trust loaned Oldham Properties $750,000 for the purpose of funding the purchase of rental properties. The loan was secured by a mortgage on ten single-family homes owned by Oldham Properties. Oldham, on behalf of Oldham Properties, executed the mortgage note and mortgage deed and, pursuant to Section 8 of the note, was personally liable. The loan terms required monthly interest-only payments of $7,500 for a one-year period, with the principal amount due in full on March 9, 2019.

{¶ 4} It is undisputed that appellants made the monthly payments but failed to pay the balance due on March 9, 2019. Oldham claimed that Howard Ross, on behalf of the Trust, orally agreed to modify the terms of the note and accepted an interest-only payment beyond the maturity date of the loan. The Trust denied this assertion, contending that the mortgage deed prohibited any oral modifications of the mortgage. Following appellants' alleged breach, the Trust invoked Section 13 of the mortgage, which authorized the Trust to collect rents from the tenants of the mortgage-secured properties. The Trust contracted with Gentile Property Management, Ltd. ("Gentile") to manage the properties secured by the mortgage and collect the rents on those properties. Notices were sent to the existing tenants advising them to pay their rent to Gentile and that Gentile would manage the properties going forward.

{¶ 5} In June 2019, the Trust filed a complaint against appellants seeking judgment on the note, attorney fees, late fees, costs, and interest pursuant to the terms of the note. Service was perfected against Oldham Properties in August 2019, and Oldham Properties filed an answer to the complaint on October 30, 2019. On November 8, 2019, the Trust moved for summary judgment against Oldham Properties. On December 13, 2019, the trial court partially granted the Trust's unopposed motion for summary judgment in part, but held the determination of damages in abeyance.

{¶ 6} Service was perfected against Oldham by a process server on September 23, 2019, and again by regular U.S. Mail, sent October 7, 2019. On

December 5, 2019, Oldham filed his answer; Oldham Properties filed an amended answer; and both appellants filed a combined counterclaim, seeking a restraining order and other equitable relief.[1] Appellants also asserted claims for fraud, breach of contract, tortious interference with business and contractual relationships, unjust enrichment, assault, defamation, and violation of the Fair Debt Collections Practices Act. Appellants maintained that the Trust acted beyond its authority in its collection of rents by initiating eviction proceedings, harassing tenants, and damaging appellants' rental properties.

{¶ 7} The Trust answered the counterclaim and subsequently sought leave to amend its complaint to include additional causes of action for promissory estoppel, to pierce the corporate veil, fraud and misrepresentation, to set aside a fraudulent conveyance, constructive trust, equitable lien, and injunctive relief.[2] The amended complaint also added as parties: (1) RO Properties Family Trust; (2) Robinson Oldham, as Trustee of the RO Properties Family Trust; and (3) Theresa Oldham, as Trustee of the RO Properties Family Trust. The basis for the amended complaint was that the Trust had discovered that Oldham did not own the real property he listed in his personal financing statement, which he had provided to the

---

[1] Appellants did not raise any argument with the trial court that the amended answer filed by Oldham Properties precluded the trial court from granting summary judgment in favor of the Trust.

[2] Although the Trust had previously obtained partial summary judgment against Oldham Properties, it attempted to revive the action against Oldham Properties in its amended complaint. In January 2021, the trial court recognized this attempt and dismissed the amended complaint against Oldham Properties but noted that the issue of damages remained pending.

Trust when he executed the note and mortgage. The financing statement reflected that the real property had a value of over $2 million and Oldham had a personal net worth of approximately $5 million. According to the Trust, this information induced the Trust to extend the loan. According to the amended complaint, Oldham had transferred his real property to the RO Properties Family Trust, in which both Oldham and Theresa Oldham are trustees.

{¶ 8} The next year of litigation involved extensive and exhausting motion practice. Seemingly, every motion was met with opposition, and multiple motions to compel or requests for sanctions were filed by both parties. In September 2020, appellants voluntarily dismissed Count 6 of their counterclaim. In October 2020, the Trust voluntarily dismissed Theresa Oldham from the action, and over objection, the trial court subsequently granted her motion for a dismissal with prejudice.

## II. December 21, 2020 Order

{¶ 9} The trial court scheduled a bench trial for February 1, 2021. In preparation for trial, the court issued an order on December 21, 2020 ("trial order") setting forth the deadline for the submission of trial briefs, proposed stipulations and objections, exhibits, and motions in limine. The court noted that the deadline was January 18, 2021. The court further clarified its requirements on presentation of exhibits and expert witnesses. Regarding expert witnesses, the trial order required that "each party shall include as one of their exhibits the curriculum vitae of any expert(s) that may be called to present evidence or testimony at trial for the use of the court." The court order expressly provided that "witnesses or exhibits not

listed in the trial brief shall not testify or be introduced at trial absent a showing of good cause." The court then identified the parameters of a "complete trial brief," which included, "the estimated length of trial; a statement of the facts; a discussion of the controlling law; a list of proposed witnesses along with a brief description of the subject matter of the testimony of each witness; an index of all proposed exhibits containing a brief description of each exhibit; and a discussion of any evidentiary issues likely to arise at trial. In addition, counsel shall submit proposed findings of fact and conclusions of law." The court provided additional instructions on depositions and transcripts. The court warned the parties in its order that "[f]ailure to comply with any portion of this court's orders may result in sanctions, including dismissal or judgment."

{¶ 10} The Trust had previously filed a trial brief on September 29, 2020, when trial was originally scheduled for October. The brief was not filed in compliance with any specific order, but in accordance with the general rules of procedure for civil cases, as found on the trial judge's respective web page on the Court of Common Pleas of Cuyahoga County, General Division website. The Trust did not file a new trial brief in response to the specific trial order.

{¶ 11} On January 18, 2021, appellants filed various independent documents, including (1) proposed findings of fact and conclusions of law; (2) proposed stipulations of fact; (3) an exhibit list and exhibits A through FF; and (4) a witness list with a brief description of the subject matter of their testimony.

Appellants did not file a complete or all-in-one cohesive trial brief in accordance with the trial order, however.

### III. January 20, 2021 Hearing

{¶ 12} On January 20, 2021, the trial court conducted an evidentiary hearing on all pending motions, including motions (1) for summary judgment and briefs in opposition, (2) for sanctions, (3) to compel, (4) to quash subpoenas, and (5) in limine. Relevant to this appeal, the court noted that the Trust's amended complaint remained pending only against (1) Oldham, individually and as trustee of the RO Family Trust; and (2) RO Properties Family Trust, and that the appellants' counterclaim, except for Count 6, remained pending against the Trust.

{¶ 13} Regarding the Trust's July 13, 2020 motion for summary judgment on its amended complaint, the trial court denied summary judgment on Counts 4, 5, 6, 7, and 8 of the amended complaint. The trial court granted summary judgment against the remaining defendants and in favor of the Trust on Counts 1 (action on the note), 2 (promissory estoppel), and 3 (piercing the corporate veil). The court entered judgment but held damages in abeyance until after trial.[3]

{¶ 14} Regarding the Trust's motion for summary judgment on appellants' counterclaims, the trial court granted summary judgment in favor of the Trust on Counts 2, 3, and 5. The trial court denied the Trust's motion on Counts 1 (seeking a restraining order), Count 4 (tortious interference with business and contractual

---

[3] Prior to trial, the trial court granted the Trust's motion to amend its amended complaint to voluntarily dismiss with prejudice Counts 4, 5, 6, 7, and 8.

relationships), and Count 7 (defamation). The court noted that appellants dismissed Count 8 during the hearing and had previously dismissed Count 6. During its ruling, the court specifically noted appellants' ability to raise its remaining claims at trial. The court stated:

> The only part that's going to be left, [appellants] are going to be able to argue the issue of notice for the rents in trial. [Appellants are] going to be able to argue the issue of defamation in trial. [Appellants are] going to be able to argue tortious interference with business relationships in trial

(Tr. 151-152.)

> \* \* \*

> We are now set for trial February 1st. That is a bench trial. It should be a very, very short trial because there's only a few issues left to deal with. The issue of damages will be dealt with that day. I'm assuming that's going to be the longest part of that. So make sure you come prepared for the damages portion.

(Tr. 162.)

{¶ 15} Despite the fact that the deadline had passed for the parties to submit their respective trial briefs, compliance with the trial order was neither addressed nor discussed by the trial court or the Trust. In fact, the trial court issued an order on January 27, 2021, specifically setting forth that "a bench trial on the counterclaim remains set for [February 1, 2021]." Again, the court made no mention of appellants' noncompliance with the trial order.

{¶ 16} Accordingly, the only issues that remained pending for the February 1, 2021 trial were Counts 1, 4, and 7 of appellants' counterclaim. Following trial on the counterclaim, the trial court planned to conduct a hearing on damages, including

attorney fees, with respect to the judgments against Oldham, individually, and Oldham Properties, and any other damages resulting from trial.

## IV.  Motion for Sanctions and in Limine

{¶ 17}  On January 29, 2021, the Friday before trial, the Trust filed a motion "to preclude [appellants] from further defending at trial, proceeding on counterclaim or calling witnesses."  In essence, the Trust requested that the trial court grant sanctions against appellants for failing to file a complete trial brief in compliance with the trial order.

{¶ 18}  On February 1, 2021, the morning of trial, appellants filed a motion in limine to preclude the Trust from presenting expert testimony on the issue of attorney fees because the Trust had failed to comply with the trial order.  Specifically, appellants claimed that the Trust failed to include its expert's curriculum vitae on its exhibit list and produce it as an exhibit.

## V.  February 1, 2021 — Trial Date

{¶ 19}  Prior to trial, the court addressed all pending motions, including the Trust's motion requesting sanctions for appellants' failure to file a trial brief, and appellants' motion in limine to exclude the Trust's expert's testimony.  (Tr. 171.)[4]

{¶ 20} Regarding the Trust's motion, the trial court noted that appellants filed a witness and exhibit list, exhibits, proposed stipulations of fact, and proposed

---

[4] The trial court also considered appellants' motions against the Trust to show cause why the complaint should not be dismissed with prejudice and sanctions based on the Trust's alleged fraud against the court, fraudulent misrepresentation, gross negligence, and fraud against appellants.  Following a hearing, which included witness testimony and the presentation of evidence, the trial court denied the motions.

findings of fact and conclusions of law. It concluded, however, that appellants failed to file a complete trial brief, which was to include all the aforementioned filings. Quoting from its order, the trial court stated, "witness or exhibits not listed in the trial brief shall not testify or be introduced at trial absent a showing of good cause." (Tr. 171.) According to the trial court, filing the witness and exhibit lists separately from the written trial brief was insufficient for compliance with its order.[5]

{¶ 21} The trial court allowed appellants to provide "good cause" why they failed to comply with the court's order. Counsel explained that co-counsel had suffered a medical condition over the weekend that precluded the completion of the trial brief. Counsel admitted that despite the ailment, the trial brief was already late pursuant to the order, but contended that the Trust was not prejudiced by appellants' failure to file a brief because the issues before the court had remained unchanged, and the witnesses and exhibits had been provided.

{¶ 22} Counsel for the Trust objected, contending that while it had complied with all of the court's orders "to the letter all the way through this case," the appellants had not. (Tr. 179.) It further stated that appellants' filing of a trial brief would not have been a difficult process because appellants had extensively briefed the issues in the case "ad nauseam," and could have used one of their summary judgment responses and simply recaptioned it as a trial brief. Counsel for the Trust argued, nevertheless, that the counterclaims were "entirely baseless." (Tr. 179.)

---

[5] The court also noted that appellants were not in compliance with its trial order by submitting deposition and trial transcripts to the court on the day of trial. The court also excluded the use of those transcripts.

{¶ 23} In response, appellants agreed that the issues had been fully evaluated in the summary judgment filings, which the trial court had recently denied, finding genuine issues of material fact for trial. Appellants' counsel reiterated that the Trust was not prejudiced by appellants failure to file another brief setting forth the same issues for trial.

{¶ 24} The trial court found that appellants had failed to satisfy their burden of demonstrating just cause for failing to file a trial brief. The court noted its harsh ruling but found that the trial brief was integral to the trial. The court then proceeded to address appellants' remaining claims. It found that without any witness testimony and exhibits in support, appellants could not support their claims, and entered judgment in favor of the Trust on Counts 1, 4, and 7 of appellants' counterclaim.

{¶ 25} The trial court stated,

So because the defendant did not file a trial brief then his people that are listed on this witness list cannot testify, and the documents cannot be used. Now, I don't know what's left in the trial. If you don't have witnesses to call, then that is just that.

* * *

So with that ruling, the question is on behalf of the defense I don't think that there is anything that you have to put on because you did not do your trial brief. So my thought is your last three things on your counterclaim are gone. Is there any other way you could put on somebody? I don't know if you can if you didn't file a trial brief, right?

(Tr. 190-191.)

{¶ 26} The trial court subsequently stated, "Because there was no trial brief filed and because I ruled that your counterclaim is — the remaining things were

dismissed because you did not have anything to go forward on those claims * * *." (Tr. 333.) However, when the trial court issued its written decision, the court did not dismiss the counterclaim but rather entered judgment in favor of the Trust. The trial court explained in its subsequent written decision:

> On the morning of trial but prior to its commencement, the Court addressed the issue of Defendants' failure to adhere to this Court's trial orders entered on December 21, 2020 (the "Trial Order").
>
> Among other things, the Trial Order required all parties to file a trial brief. Per this order, a trial brief must contain the following: the estimated length of trial; statement of the facts; a discussion of the controlling law; a list of proposed witnesses along with a brief description of the subject matter of the testimony of each witness; an index of all proposed exhibits containing a brief description of each exhibit; and a discussion of any evidentiary issues likely to arise at trial. Although the Plaintiff filed his trial brief, the Defendants failed to file a trial brief.
>
> The Trial Order further provided that any witnesses and exhibits not listed in the trial brief shall not testify or be introduced at trial absent a showing of good cause. Defendants filed a separate witness list and exhibit list on January 18, 2021. The Court finds that Defendants failed to show good cause as to why they did not file their trial brief.

{¶ 27} The trial court next considered appellants' motion in limine seeking to exclude the Trust's expert witness from testifying for failing to comply with the trial order requiring that the expert's curriculum vitae be included as an exhibit. The Trust opposed the motion, contending that its disclosed expert report included a paragraph discussing its expert's qualifications. During this discussion, it was further discovered that although the Trust had included an exhibit list in its September 2020 trial brief, it did not give appellants a copy of any exhibits until the morning of trial. These exhibits included detailed itemized billing statements and

invoices. The court found this late disclosure concerning, but ultimately denied appellants' motion in limine, despite the Trust failing to produce or list as an exhibit its expert's formal curriculum vitae.

{¶ 28} Based on the trial court's rulings, the only matter remaining for the trial court to consider were damages on the Trust's judgments against Oldham and Oldham Properties. Following a hearing and presentation of evidence, the court issued a written order awarding damages against Oldham and Oldham Properties, jointly and severally, in the principal amount of $750,000, plus $30,000 in late fees, plus interest at the contract rate of 18% per annum from the date of default, plus attorney fees in the amount of $139,417.74. The court further ordered that appellants were entitled to a credit of $48,728.23 from rents collected.

{¶ 29} Appellants now appeal, raising two assignments of error.

## VI. The Appeal

{¶ 30} Appellants contend in their first assignment of error that the trial court abused its discretion when it effectively dismissed its counterclaim by granting the Trust's motion to preclude appellants from further defending at trial, proceeding on their counterclaim, and calling witnesses as a sanction for failing to file a trial brief in compliance with the trial order.

## A. Civ.R. 41(B)(1) [6]

{¶ 31} Pursuant to Civ.R. 41(B)(1), "[w]here the plaintiff fails to * * * comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim." This rule equally applies to a dismissal of any counterclaim. Civ.R. 41(C). "A dismissal under division (B) * * * operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies." Civ.R. 41(B)(3).

{¶ 32} A trial court's decision dismissing an action pursuant to Civ.R. 41(B)(1) is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 47, 684 N.E.2d 319 (1997), citing *Jones v. Hartranft*, 78 Ohio St.3d 368, 371, 678 N.E.2d 530 (1997). A trial court abuses its discretion where its decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Where a case is dismissed with prejudice, reviewing courts apply a heightened abuse-of-discretion standard of review because a dismissal with prejudice forever denies a party a review of its claims on the merits. *Jones* at 372.

---

[6] The record is ambiguous regarding whether the trial court dismissed appellants' counterclaim pursuant to Civ.R. 41(B) or entered a judgment in favor of the Trust. The court stated on the record that it dismissed the counterclaim (tr. 333), but in its written judgment entry, the trial court entered judgment in favor of the Trust. The Trust's motion did not seek dismissal or judgment. However, in the trial order, the trial court warned the parties that failure to comply with the order could result in dismissal or judgment. Because the trial court did not address the merits of appellants' counterclaim prior to entering judgment, this court will address both possibilities.

{¶ 33} Appellants cite to cases from this court interpreting Civ.R. 41(B)(1) and holding that dismissal under this rule is a drastic remedy that should be used sparingly and only in extreme situations where a "'party's conduct is so negligent, irresponsible, contumacious, or dilatory.'" *St. Vincent Charity v. Paluscsak*, 8th Dist. Cuyahoga No. 108641, 2020-Ohio-1501, ¶ 40, quoting *Willis v. RCA Corp.*, 12 Ohio App.3d 1, 2, 465 N.E.2d 924 (8th Dist.1983); *Perkowski v. Yonkov*, 8th Dist. Cuyahoga No. 109567, 2021-Ohio-1879; *Whipple v. Estate of Prentiss*, 2020-Ohio-2825, 154 N.E.3d 550 (8th Dist.). In *Paluscsak*, *Perkowski*, and *Whipple*, this court reversed the trial courts' decisions dismissing a party's action for failure to prosecute pursuant to Civ.R. 41(B)(1).

{¶ 34} In *Paluscsak*, this court reversed a dismissal of defendant's counterclaim after counsel failed to attend a scheduled pretrial. This court found that counsel's failure to attend was predicated on a miscommunication and a scheduling error but was not willful conduct. This court further found that the trial court provided insufficient notice to the defendant prior to dismissing the counterclaim only hours after the missed pretrial, thus failing to afford the defendant an opportunity to defend against dismissal.

{¶ 35} In *Perkowski*, this court reversed a dismissal of plaintiffs' complaint after counsel failed to participate in a case management conference ("CMC"). Because the electronic notice from the court was delivered to counsel's "spam folder" in his email. This court found that even though counsel had failed to attend a previous CMC, which resulted in a dismissal without prejudice, counsel's failure to

attend this time was not willful or in bad faith to justify forever denying the case to be heard on the merits. *Id.* at ¶ 13. This court further found that the notice provided to plaintiffs was insufficient because it did not provide an opportunity to defend against dismissal. *Id.* at ¶ 12.

{¶ 36} Finally, in *Whipple*, this court reversed a dismissal of plaintiff's complaint after counsel failed to appear for a pretrial and failed to contact the court after the missed pretrial. Unlike the defendant in *Paluscsak*, Whipple had sufficient notice that his case could be dismissed for failing to appear at the pretrial, and was afforded a reasonable opportunity prior to the dismissal to contact the court and explain why the case should not be dismissed for failure to comply with the court's order. Nevertheless, this court found that based upon the totality of the circumstances, dismissal with prejudice was improper because counsel had actively participated in the litigation for seven months, including engaging in settlement negotiations and preparing for mediation, and the failure to appear was not willful or in bad faith. *Id.* at ¶ 28.

{¶ 37} Based on the foregoing cases, our review of the trial court's dismissal of appellants' counterclaims involves two steps. First, we must determine whether the trial court provided sufficient notice to appellants prior to the dismissal. Then this court must determine whether the dismissal constituted an abuse of the trial court's discretion under the circumstances. *Paluscak* at ¶ 28, citing *Walker v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 91648, 2009-Ohio-2261, ¶ 8, citing *Asres v. Dalton*, 10th Dist. Franklin No. 05AP-632, 2006-Ohio-507, ¶ 14.

### 1. Notice

{¶ 38} Before a trial court can properly dismiss a party's claim under Civ.R. 41(B)(1), the record must show that the party had notice of the possibility of dismissal. *Mokrytzky v. Capstar Capital Corp.*, 8th Dist. Cuyahoga No. 91287, 2009-Ohio-238, ¶ 12, citing *Logsdon v. Nichols*, 72 Ohio St.3d 124, 647 N.E.2d 1361 (1995). The purpose of the notice requirement is to provide a party who is in default of a court order an opportunity to correct or explain the circumstances of the party's default and to provide reasons as to why the case should not be dismissed with prejudice. *Id.* Civ.R. 41(B)(1)'s notice requirement is satisfied "when counsel has been informed that dismissal is a possibility and has had a reasonable opportunity to defend against dismissal." *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 49, 684 N.E.2d 319 (1997). What constitutes notice and an opportunity to be heard regarding a possible dismissal is examined on a case-by-case basis. *Hill v. Marshall*, 10th Dist. Franklin No. 12AP-805, 2013-Ohio-5538, ¶ 8.

{¶ 39} In this case, the trial court warned the parties in its trial order that "failure to comply with any portion of this court's orders may result in sanctions, including dismissal or judgment." This notice was at the end of a two-page order regarding trial preparation and requirements. Despite trial being scheduled on at least two other occasions, the trial court had never issued this type of specific trial order regarding those trials. Admittedly, a general order existed on the trial court's webpage regarding trial, but the trial order set forth additional requirements not included in the general order. Additionally, the record reflects that the trial court

included similar boilerplate language in all of its journal entries pertaining to scheduling hearings, pretrials, or trials — "failure to appear at any court scheduled event in the future may result in dismissal of plaintiff's claims for want of prosecution or judgment rendered against defendant." In *Paluscak*, this court concluded that this type of boilerplate language in a court's judgment entries may not constitute sufficient notice under Civ.R. 41 when circumstances exist demonstrating that the parties were actively engaged in the proceedings and dismissal would be unreasonable. *Paluscak* at ¶ 45.

{¶ 40} In this case, additional circumstances existed that rendered the notice insufficient, or at least demonstrate that counsel's conduct was not willful or in bad faith. Despite the warning in the trial order, the trial court made subsequent statements that would have led counsel to believe that the trial would go forward without the filing of a complete or cohesive trial brief.

{¶ 41} The deadline to file the trial brief was January 18, 2021. On that day, appellants filed 17 documents, which included: (1) proposed findings of fact and conclusions of law; (2) proposed stipulations of fact; (3) an exhibit list and exhibits A through FF; and (4) a witness list. Two days later, on January 20, 2021, the trial court conducted a hearing on the Trust's motions for summary judgment and other pending motions filed by the parties. During that hearing, the trial court denied the Trust's motion for summary judgment on Counts 1, 4, and 7 of appellants' counterclaim. The court specifically stated that appellants would have the opportunity to raise these remaining claims at trial. (Tr. 151-152.) Additionally, the

trial court repeated that "[w]e are now set for trial February 1st." (Tr. 162.) Subsequently, on January 27, 2021, the trial court issued a written journal entry setting forth that a bench trial on the counterclaim remained set for February 1, 2021.

{¶ 42} Accordingly, we find that the trial court's statements at the January 20, 2021 hearing and in the January 27, 2021 subsequent journal entry that a bench trial on the counterclaim would proceed would lead appellants to reasonably believe that a trial on its counterclaim would occur on February 1, 2021. The imposed January 18, 2021 deadline had already passed, yet the court did not indicate that appellants' counterclaims would not be decided on its merits. Arguably, appellants were not on notice that their counterclaims would be subsequently dismissed five days later for failing to file a comprehensive trial brief.

## 2. Abuse of Discretion

{¶ 43} Even if notice of possible dismissal had been sufficient, the totality of the circumstances dictate that dismissal of or judgment on the counterclaim as a sanction for failing to strictly comply with the trial order was an abuse of discretion. The trial court sanctioned appellants by preventing their witnesses from testifying and exhibits from being introduced because its independently filed witness and exhibit lists were not included in one complete trial brief

{¶ 44} The trial court recognized the harshness of its decision but concluded that adherence to its order was required. Interestingly, our review of the trial order and comparison of the filings by both parties demonstrates that neither party fully

complied with the trial order, yet only appellants were sanctioned by failing to comply with the court's order — despite appellant also filing a motion in limine because of the Trust's strict noncompliance with the trial order.

{¶ 45} Appellants do not dispute that they did not comply with the trial court's order by failing to file a complete, all-in-one trial brief — the missing parts were (1) estimated length of trial, (2) statement of facts, (3) discussion of the controlling law, an (4) discussion of any evidentiary issues that could arise at trial. Although appellants filed a witness list that thoroughly identified the subject matter of the witness testimony and an exhibit list, those two lists were not combined into one separate cohesive trial brief, which according to the trial court was fatal to its proceedings at trial. However, appellants further complied with the trial court's order by (1) submitting proposed findings of fact and conclusions of law; and (2) proposed stipulations as to undisputed facts.

{¶ 46} In comparison, the record reflects that the Trust did not (1) submit proposed findings of fact and conclusions of law; (2) submit proposed stipulations as to undisputed facts; (3) identify in its exhibit list the curriculum vitae of the Trust's attorney fee expert; (4) estimate the length of trial; and (5) discuss any evidentiary issues that could arise at trial. Moreover, the trial brief filed by the Trust on September 29, 2020, was essentially obsolete because subsequent to this filing, the court ruled on the Trust's motions for summary judgment on both the amended complaint and counterclaims, thus rendering a significant portion of its trial brief irrelevant.

{¶ 47} Despite the Trust failing to strictly comply with the trial court's order, the trial court denied appellants' motion in limine precluding the Trust's expert from presenting expert testimony on the issue of attorney fees. We find that the trial court's selective enforcement of its trial order was arbitrary and unreasonable. Moreover, nothing in the record demonstrates that counsel's actions were willful or in bad faith, or an attempt to delay trial. In fact, appellants were prepared to go forward with trial on their counterclaim based on the trial court's statements at the January 20 hearing and the January 27 journal entry.

{¶ 48} Additionally, it is arguable that the trial court considered the Trust's request as a motion in limine for a discovery sanction pursuant to Civ.R. 37(B)(1)(a-g) (failure to comply with discovery orders may warrant sanctions including exclusion of evidence, striking of pleadings, and rendering default judgment.)

{¶ 49} The motion requested that appellants be precluded from further defending at trial, proceeding on their counterclaim, and calling witnesses. It did not specifically request dismissal of the counterclaim or judgment in the Trust's favor. After the court granted the motion, the court stated:

> So because the defendant did not file a trial brief then his people that are listed on this witness list cannot testify, and the documents cannot be used. Now, I don't know what's left in the trial. If you don't have witnesses to call, then that is just that.
>
> * * *
>
> So with that ruling, the question is on behalf of the defense I don't think that there is anything that you have to put on because you did not do your trial brief. So my thought is your last three things on your counterclaim are gone. Is there any other way you could put on somebody? I don't know if you can if you didn't file a trial brief, right?

(Tr. 190-191.) These statements reflect that the trial court may have treated the Trust's motion as one in limine.

{¶ 50} In fact, this court has also considered that the failure to file a trial brief is akin to a discovery sanction. In *Stross v. Laderman*, 8th Dist. Cuyahoga No. 74686, 1999 Ohio App. LEXIS 4452 (Sept. 23, 1999), this court upheld the trial court's decision prohibiting appellant from presenting a witness as a sanction for failing to file a trial brief. On appeal, appellant contended that the imposed sanction was too harsh under the circumstances because without the witness, judgment in his favor was impossible. Further, appellant contended that the trial court could have considered his motion for summary judgment as a trial brief. This court rejected the argument, finding that even if the court accepted the summary judgment motion as a trial brief, the motion did not refer to any witnesses and thus, the defendant lacked notice of witnesses. This court noted that "[t]he purpose of the discovery rules is to prevent surprise and the secreting of evidence favorable to one party." *Id.* at 3, citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987). Accordingly, this court determined that failing to file a trial brief is similar to a discovery violation because the trial brief discloses to opposing counsel the witnesses and exhibits to be used at trial.

{¶ 51} The Trust cites to *Evans v. Corbett*, 5th Dist. Muskingum No. 82-CA-22, 1982 Ohio App. LEXIS 15163 (Dec. 1, 1982), in support of the trial court's ruling. In *Evans*, much like in *Stross*, plaintiff did not comply with the trial court's local rule requiring the filing of a trial brief. The trial court sanctioned plaintiff by dismissing

Counts 2 and 3 of the complaint. On appeal, appellant claimed that the answer brief to the motion for summary judgment was sufficient to comply with the local rule. The Fifth District upheld the trial court's decision, finding that the content included in a summary judgment is different from that of a trial brief, because a trial brief includes evidentiary issues and witness information. *Id.* at 6.

{¶ 52} We find *Stross* and *Evans* distinguishable. In this case, like *Stross*, without appellants' witnesses or exhibits, judgment in appellants' favor was impossible. However, unlike in *Stross*, appellants filed witness and exhibit lists; thus, the element of surprise did not exist. Moreover, the Trust admitted that the issues were discussed "ad nauseum" in appellants' opposition to the Trust's summary judgment motions, which were considered only two weeks prior to trial. The trial court recognized that the case had been pending for a lengthy period of time and was well-aware of the issues of the case.

{¶ 53} *Evans* is equally distinguishable because the information that the Fifth District found relevant, yet absent, are present in this case. Here, appellants filed both witness and exhibit lists, proposed findings of fact, conclusions of law, and stipulations of fact. Accordingly, there was no element of surprise to the parties or to the court warranting the preclusion of appellants' witnesses and exhibits. In fact, the Trust never argued that appellants' defective trial brief hindered its defense of appellants' counterclaims.

{¶ 54} Whether this court views the trial court's decision as a dismissal with prejudice under Civ.R. 41 for failing to comply with the court's order, a discovery

sanction, or a judgment in favor of the Trust, the court's ruling operates as an adjudication of the merits. *See* Civ.R. 41(B)(3). "It is a basic tenant of Ohio's jurisprudence that cases should be decided on their merits." *Perkowski*, 8th Dist. Cuyahoga No. 109567, 2021-Ohio-1879, at ¶ 17. The power of a trial court to prevent undue delays and control its docket must be weighed and considered alongside the policy that favors the disposition of all litigation on its merits. *Whipple*, 2020-Ohio-2825, 154 N.E.3d 550, at ¶ 18, citing *Willis*, 12 Ohio App.3d 1, at 3, 465 N.E.2d 924.

{¶ 55} We find no actual disadvantage to the trial court in not having a complete trial brief for trial in this case. This matter was set for a bench trial in front of the judge who had presided over the entire two years of the case. The trial court recognized that because it was a bench trial, it would "go fast." (Tr. 52, Aug. 19, 2020). Additionally, at the January 20, 2021 hearing, the court explained that the February 1, 2021 trial "is a bench trial. It should be very, very short because there's only a few issues left to deal with." (Tr. 162.) As the trial court noted on several occasions, it was aware of the limited issues for trial. Additionally, we note that just two weeks prior to trial, the court considered the Trust's motions for summary judgment and appellants' briefs in opposition at a hearing, where the court thoroughly discussed and carefully considered each motion and argument made at the hearing, articulated its ruling on each count, and entered judgment where appropriate. The court found that three of appellants' claims warranted a trial. Accordingly, appellants' failure to file certain portions of a trial brief or combine the

witness and exhibit list into one document does not reasonably warrant forever barring the consideration of their claims on the merits.

{¶ 56} Moreover, we find that there was no undue delay because trial was scheduled to go forward, all parties were prepared to proceed with trial, and the Trust's hearing on damages was scheduled for the same day. Accordingly, the trial court was set to resolve the case that day.

## VII. Conclusion

{¶ 57} We recognize that this case has been contentious and unreasonably drawn out by the parties. Litigation in this case has been pending since June 2019. And, as the trial court noted, the parties filed approximately 65 motions over the life of this case. The record is abundantly clear that appellants' counsel actively participated in this case; this is not a situation of ongoing or repeated dilatory or irresponsible conduct. Our review of the trial court's docket reveals that both parties received substantial consideration in their filings, including extensions and leave of court. This court can appreciate the frustration the trial court may have experienced over the course of litigation in this case. And much like the appellate court file, the trial court file contains multiple requests for sanctions and oppositions. However, based on the entire record before this court, it was error for the trial court to dispose of the counterclaim for failing to strictly adhere to the trial order when arguably no reasonable notice under the circumstances was given, there was no surprise or undue prejudice to the Trust, there was no delay to the court or to proceeding with trial, and the court exercised arbitrary selection of enforcement of its trial order.

Disposing of appellants' counterclaim on a technicality was unreasonable. Accordingly, the first assignment of error is sustained.

{¶ 58} Judgment affirmed in part; reversed in part; and remanded. The trial court's decision dismissing appellants' counterclaims is reversed, and the case is remanded to the trial court for trial, if necessary, on Counts 1, 4, and 7 of appellants' counterclaims, and to conduct a new hearing on damages, including attorney fees and set-off. All other orders not otherwise addressed are affirmed.

It is ordered that the parties share equally in the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR